IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE: BEVERLY DIANE BLAND,                Bk. No. 06-bk-01159
        Appellant.

_____

BEVERLY DIANE BLAND,

        Appellant/Debtor,


v.                      //      CIVIL ACTION NO. 1:08CV130
                                        (Judge Keeley)

JAMES ZIGMONT,

        Appellee/Creditor.

_____

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is the appeal of Beverly Diane Bland ("Bland"), from
the May 6, 2008 decision of United States Bankruptcy Judge Patrick
M. Flatley dismissing her Chapter 13 bankruptcy petition.  For the
reasons discussed below, the Court **AFFIRMS** the decision of the
bankruptcy court.

## I. Background

In June 2003, Bland personally borrowed $100,000 from James
Zigmont ("Zigmont").  The loan was to be repaid from the income
Bland received from The Galley, Inc., a restaurant and video
lottery parlor, a business venture in which she was the 100 percent
shareholder.  Bland made 14 payments on the loan before she
defaulted in 2004.  In October of that same year, Bland and her

husband filed a Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of West Virginia.

While the Chapter 7 bankruptcy proceeding was pending, Bland prepared her 2004 tax returns and discovered that her son had embezzled money from The Galley. Bland, however, did not disclose this information to the Chapter 7 trustee, the Court, or Zigmont, nor did she amend her bankruptcy schedules to reflect this revelation.

In March of 2005, Zigmont filed an adversary complaint against Bland seeking to exempt $92,000 from any discharge she might obtain under Chapter 7. In November of 2005, following a trial, the bankruptcy court informed the Blands that unless they converted their case to Chapter 13 within 30 days it would deny their discharge and dismiss their case. The Court based its ruling on Bland's failure to account for the proceeds of the Zigmont loan or otherwise explain her lack of assets. The Blands did not convert their case to Chapter 13, and thus, on January 12, 2006, the Court denied her discharge and closed the case.

In May 2006, Bland sold The Galley for a net profit of $4,719. Thereafter, she filed the instant Chapter 13 petition on December 14, 2006. As in her Chapter 7 case, Bland failed to disclose in her Chapter 13 petition that her son had embezzled money from her

former business. In fact, she did not reveal this information until January 5, 2007, when she participated in the 11 U.S.C. § 341(a) meeting of creditors. When pressed for more information regarding her son's whereabouts, she disclosed that her son worked at an airport in Cleveland, Ohio, but stated that she did not know where he lived. She indicated, however, that her non-filing spouse knew this information. Zigmont asserts that, without an address, neither he nor the trustee was able to obtain service of process on Bland's son for the purpose of bringing a civil action against him.

Before the bankruptcy court, Zigmont objected to Bland's Chapter 13 petition, asserting that Bland did not file her petition or plan in good faith because she was attempting to discharge her obligation to him while refusing to help him recover any money from her son. The Chapter 13 trustee supported Zigmont's objection. The Bankruptcy Court agreed with Zigmont, held that Bland indeed had failed to file her Chapter 13 petition in good faith, and thus dismissed it. In support of its holding, the Court found that Bland 1) had failed to disclose the known cause of action against her son, 2) had refused to provide her son's address, and 3) generally had refused to cooperate in any embezzlement action against her son. Stating that her actions exhibited "recalcitrance

and evasiveness," the Bankruptcy Court found her ignorance of her son's whereabouts "too outrageous to be credible."

Bland appealed to this Court, arguing that she was not required to disclose the alleged embezzlement in her Chapter 13 filings because, when she filed, she no longer owned the business. In contrast, Zigmont, as the appellee, asserts that based on the totality of the circumstances, the Bankruptcy Court correctly dismissed Bland's bankruptcy petition. The question now before the Court is whether the Bankruptcy Court clearly erred when it dismissed Bland's Chapter 13 bankruptcy petition for failure to file it in good faith.

## II. Standard of Law

The Court reviews the bankruptcy court's legal determinations de novo and its factual findings for clear error. In re Official Committee of Unsecured for Dornier Aviation, Inc., 453 F.3d 225, 231 (4th Cir. 2006). Thus, the Court shall "review the bankruptcy court's ultimate finding that the filing was not in good faith as one of fact subject to the clearly erroneous standard." Carolin Corp. v. Miller, 886 F.2d 693, 702 (4th Cir. 1989). Under this standard, this Court must "give great deference to the bankruptcy court, the trier of fact." In re Love, 957 F.2d 1350, 1354 (7th Cir. 1992). If the trial court's assessment of the evidence is

merely plausible in light of the entire record, this Court cannot reverse even if it would have weighed the evidence differently. <u>Id.</u>

### III. Analysis

#### A. <u>Standard for Determining Good Faith</u>

In dismissing Bland's bankruptcy petition for lack of good faith, the bankruptcy court applied the correct legal standards. At least three sections of the Bankruptcy Code provide grounds upon which a court may dismiss Chapter 13 bankruptcy petitions filed in bad faith. First, under 11 U.S.C. § 105(a), a bankruptcy judge has "a broad grant of judicial power" to take any necessary or appropriate action to prevent an abuse of process. <u>In re Kestell</u>, 99 F.3d 146, 148 (4th Cir. 1996). This power includes the "authority to dismiss a bankruptcy petition sua sponte for . . . lack of good faith." <u>Id.</u> at 149.

Second, courts can dismiss Chapter 13 petitions "for cause." 11 U.S.C. § 1307(c). "Reasons constituting 'cause' for dismissal include enumerated ones, such as unreasonable and prejudicial delay by the debtor . . . as well as judicially construed ones such as bad faith." <u>Id.</u> at 148 (<u>citing</u> <u>In re Love</u>, 957 F.2d 1350 (7th Cir. 1992)).

**MEMORANDUM OPINION AND ORDER**

---

Finally, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a debtor is now required to file for Chapter 13 in good faith as a condition of plan confirmation. 11 U.S.C. § 1325(a)(7).[1]

The meaning of "bad faith" differs based on which section of the Code a court uses, but, "[a]t base, this inquiry often comes down to a question of whether the filing is fundamentally unfair . . . to creditors." In re Love, 957 F.2d at 1357 (discussing § 1307(c) and § 1325(a)(3)).[2] Under § 105(a), the court should consider the debtor's accuracy and honesty, and whether the debtor made full disclosure to the court. In re Kestell, 99 F.3d at 149. Under § 1307(c), a court determines bad faith by conducting a case-by-case, fact-intensive inquiry that considers the totality of the

---

[1] Although § 1325(a) speaks to plan confirmation and does not explicitly mention petition dismissal, courts have authority under § 105(a) and § 1307(c) to fashion the appropriate remedy for plans that run afoul of the good faith requirements of § 1325(a).

[2] The Love court distinguishes between the good faith analyses of § 1307(c) and § 1352(a)(3). Specifically, the court states that although the analyses are not identical they also are not entirely separate. While the § 1307(c) analysis is a "broad inquiry focusing on the fairness involved in the initiation of Chapter 13 bankruptcy proceedings," the § 1325(a) analysis is "a more narrow inquiry focusing on the good faith with regard to the Chapter 13 plan." In re Love, 957 F.2d at 1360 (emphasis added). Nevertheless, there is "substantial overlap between these two inquiries." Id.

circumstances. <u>In re Kestell</u>, 99 F.3d at 148 (<u>citing</u> <u>In re Love</u>, 957 F.2d 1350)). A non-exhaustive list of the relevant factors under this standard includes the debtor's pre-petition conduct, the nature of the debt, the timing of the petition, how the debt arose, how the debtor's actions affected creditors, how the debtor treated creditors both before and after filing, and whether the debtor has been forthcoming with the court and creditors. <u>In re Love</u>, 957 F.2d at 1356-57.

Finally, in determining whether a debtor has filed his petition in good faith for purposes of § 1325(a)(7), the Court must determine "'whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan.'" <u>In re Joseph Bateman, Jr.</u>, 515 F.3d 272, 283 (4th Cir. 2008) (<u>citing</u> <u>Deans v. O'Donnell</u>, 692 F.2d 968, 972 (4th Cir. 1982)).[3] Pertinent factors to consider in this analysis include the debtor's financial situation, the period of time over which payment will be made, the debtor's

---

[3]     Section 1325(a)(7) was added to the code pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 1995. The good faith analysis under this rule remains unclear. However, the Fourth Circuit has at least suggested that courts must conduct the same good faith analysis under § 1325(a)(7) as they do under § 1325(a)(3). In <u>In re Joseph Bateman, Jr.</u>, 515 F.3d 272 (4th Cir. 2008), a case involving § 1325(a)(7), the Fourth Circuit cites to the good faith standard in <u>Deans v. O'Donnell</u>, 692 F.2d 968, 972 (4th Cir. 1982), a case involving § 1325(a)(3).

<u>MEMORANDUM OPINION AND ORDER</u>

employment history and future prospects, the nature and amount of unsecured claims, the debtor's honesty in representing facts, any unusual or exceptional problems facing the debtor, and the debtor's past bankruptcy filings. <u>Deans</u>, 692 F.2d at 972. A court may also factor the debtor's pre-petition conduct into its good faith analysis. <u>See</u> <u>Neufeld v. Freeman</u>, 794 F.2d 149, 152 (4th Cir. 1986).[4]

**B. <u>Application of the Good Faith Standard</u>**

Having concluded that the bankruptcy court applied the correct legal standards in its good faith analysis, the Court now reviews the bankruptcy court's factual findings for clear error. As discussed above, the court specifically found that Bland 1) had failed to disclose the known cause of action against her son, 2) had refused to provide her son's address, and 3) generally had refused to cooperate in any embezzlement action against her son. Based on these findings, the bankruptcy court ultimately concluded that Bland filed her Chapter 13 petition in bad faith.

Regarding the first finding, the bankruptcy court found that Bland was required to disclose the claim in her Chapter 13 petition

---

[4]     However, "a debtor's pre-petition culpability is not a basis, standing alone, for denying [a debtor] the benefits of the bankruptcy law." <u>Neufeld</u>, 794 F.2d at 152.

that The Galley had against her son as one of her personal assets.
It stated:

> Here, the Debtor failed to disclose the known cause of
> action against her son on Schedule B of her bankruptcy
> petition. Although the Debtor's son allegedly embezzled
> funds from The Galley, Inc., and not the Debtor, The
> Galley, Inc., is no longer operating. As its 100%
> shareholder, the Debtor would be entitled to any
> distribution of assets from The Galley, Inc.

In re Bland, 2008 WL 2002647 (Bk. N.D.W. Va. 2008). In reaching
this conclusion, the bankruptcy court relied on a case from the
Fifth Circuit holding that debtors must "disclose all assets,
including contingent and unliquidated claims." Browning Mfg. v.
Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 207-08 (5th Cir.
1999) (emphasis in original).

In her defense, Bland argues that she was not required to
disclose this "asset" because she no longer owned the claim when
she filed her Chapter 13 petition. In her § 341 hearing, Bland, as
the sole shareholder in The Galley, stated that when she sold The
Galley, she sold "everything, including the liabilities." See dkt.
no. 6. Accordingly, Bland asserts that the bankruptcy court
incorrectly relied on this basis in finding that she filed her
Chapter 13 petition in bad faith.

## MEMORANDUM OPINION AND ORDER

Based on the record before it,[5] this Court cannot conclude that Bland owned this asset when she filed her Chapter 13 bankruptcy petition.  The record establishes that she had sold her entire business, not just certain assets of the business, in May 2006.  Because the civil claim against her son is an asset of her former business it belongs to the new owner of The Galley.  Thus, because Bland was not required to disclose, as an asset in her bankruptcy, a legal claim belonging to a business sold seven months before she filed under Chapter 13, the bankruptcy court appears to have incorrectly relied on this non-disclosure as evidence of bad faith in Bland's Chapter 13 filings.

Nevertheless, the totality of the evidence supports the bankruptcy court's ultimate conclusion that Bland did, in fact, file her Chapter 13 petition in bad faith.  In considering the record as a whole, the Court notes that when Bland initially discovered the cause of action against her son, she failed to disclose it as an asset.  Bland clearly should have declared it in her Chapter 7 proceeding, because, at that time, the claim belonged to The Galley, of which she was the 100 percent shareholder.

---

[5] The contract for the sale of The Galley was not made part of the record in the Chapter 13 proceeding; thus, there is no evidence available for review to determine if that debt was exempted.  The record on which the Court has relied consists of statements made by Bland and her counsel, none of which has been refuted by Zigmont.

Moreover, the record reveals that during the Chapter 7 proceeding Bland not only failed to disclose her suspicions regarding the embezzlement, she affirmatively denied knowing what had happened to the proceeds from the Zigmont loan. Indeed, Zigmont's attorney questioned Bland extensively under oath during the trial in that case, but Bland divulged nothing. <u>See</u> Dkt. no. 5, p. 18-19. It was this lack of candor that led the bankruptcy court to dismiss the Chapter 7 petition. Moreover, despite several intervening years between the alleged embezzlement and her Chapter 13 filing, she did not disclose her belief that her son had embezzled that money until her § 341 meeting. <u>Id.</u>

Finally, the record also reveals that, in the instant case, Bland displayed a lack of candor and honesty when she refused to provide her son's address or otherwise cooperate in his prosecution. In a May 25, 2007 hearing before Judge Flatley regarding her Chapter 13 petition, Bland testified that she had recently met with and spoken to her son, that her son had given his address to her husband, but that she did not have his address. <u>See</u> dkt. no. 3, p.25-26. Furthermore, she testified she had not been asked for this information. <u>Id.</u> That statement, made under oath, is clearly contradicted by the transcript of a January 7, 2007 hearing during which Zigmont's counsel asked her, point blank,

where her son lived, and she responded by saying, "I do not have his address." <u>See</u> dkt. no. 4, p. 8.

In considering the totality of the circumstances, including the debtor's pre-petition conduct and whether she has been forthcoming with the court and creditors, the Court concludes that the bankruptcy court did not clearly err in determining that Bland filed her Chapter 13 petition in bad faith. <u>See</u> <u>In re Love</u>, 957 F.2d at 1356-57. Indeed, if the bankruptcy court's "assessment of the evidence is merely plausible in light of the entire record, this Court cannot reverse even if it would have weighed the evidence differently." <u>Id.</u> at 1354. Here, in her Chapter 7 proceeding, Bland was less than forthcoming regarding the alleged embezzlement and has continued to display a lack of candor and honesty by refusing to cooperate in the location and prosecution of her son. Accordingly, the Court affirms the bankruptcy court's factual findings.

## IV. Conclusion

Because the bankruptcy court correctly applied the applicable legal standards, and because it was not clearly erroneous when it found that Bland filed her Chapter 13 petition in bad faith, the Court **AFFIRMS** the bankruptcy court's dismissal of Bland's Chapter

13 petition, **DISMISSES** the appeal, and **ORDERS** the case stricken

from the Court's docket.

The Court directs the Clerk to transmit copies of this Order

to counsel of record and to the Clerk of the United States

Bankruptcy Court for the Northern District of West Virginia.

DATED: March 4, 2009.


                                    /s/ Irene M. Keeley
                                    IRENE M. KEELEY
                                    UNITED STATES DISTRICT JUDGE